56 F.3d 70
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 In re AIR SPECIALTIES CORPORATION, a Washington corporation,
d/b/a Air America, Debtor,
Zev MELAMID, Appellant,
v.
Ronald DURKIN, Trustee, of the Chapter 7 Estate of Air
Specialties Corporation, Appellee.
 No. 93-56628.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1995.
Decided May 22, 1995.
 
 1
 Before: BEEZER and TROTT, Circuit Judges, and SHUBB,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Zev Melamid appeals the Bankruptcy Appellate Panel's ("BAP") affirmance of the bankruptcy court's grant of summary judgment in favor of Ronald Durkin ("Trustee"), the Trustee of Chapter 7 debtor Air Specialties Corp. ("ASC"). The bankruptcy court determined Melamid did not have a perfected security interest in certain aircraft spare parts on which ASC had previously granted Melamid a lien, because he failed to record his security interest with the Federal Aviation Administration Registry ("Registry") as required by 49 U.S.C. app. Sec. 1403 (repealed July 5, 1994).[1] The bankruptcy court also allowed the Trustee to set aside an $81,000 preferential transfer from ASC to Melamid.
 
 
 4
 We have jurisdiction over this appeal, pursuant to 28 U.S.C. Sec. 158(d), and we affirm the decision of the BAP.
 
 
 5
 * Aircraft Spare Parts
 
 
 6
 The controlling issue in this case is whether Melamid perfected a lien on some or all of the collateral for the loan which Melamid made to ASC. This issue turns on whether the collateral for the loan consisted of aircraft spare parts as defined in 49 U.S.C. app. Sec. 1301 and thus subject to the recording requirements of 49 U.S.C. app. Sec. 1403.
 
 Section 1403 states in pertinent part:
 
 7
 (a) The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:
 
 
 8
 ....
 
 
 9
 (3) Any ... instrument executed for security purposes, which ... affects the title to, or any interest in, any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier certified under section 1424(b) of this title for installation or use in aircraft, aircraft engines, or propellers, or any spare parts maintained by or on behalf of such an air carrier ....
 
 
 10
 ....
 
 
 11
 (c) No conveyance or instrument the recording of which is provided for by subsection (a) of this section shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given ... until such conveyance or other instrument is filed for recordation in the office of the Secretary of Transportation ....
 
 
 12
 49 U.S.C. app. Sec. 1403.
 
 
 13
 If the collateral was subject to the recording requirements of Sec. 1403, then Melamid's interest is imperfect and he can only make claims against ASC as a general creditor. On the other hand, if the collateral was not subject to the recording requirements of Sec. 1403, Melamid argues he perfected his interest by filing the UCC-1, thus, allowing him to make claims against ASC as a first priority creditor.
 
 
 14
 Specifically, Melamid alleges that two issues of material fact exist requiring the reversal of the summary judgment order: 1) whether the collateral included at least $81,000 worth of spare parts for ground and service equipment which are not subject to the recording requirements of Sec. 1403; and 2) whether Auxiliary Power Units ("APUs") are aircraft spare parts within the definition of Sec. 1301.
 
 
 15
 A. Ground and Service Equipment Spare Parts
 
 
 16
 No evidence was presented at any stage of the proceedings as to what value, if any, could be attributed to spare parts intended for ground or service equipment. The only mention of non-aircraft spare parts was made in Melamid's declaration filed in opposition to the Trustee's motion for summary judgment, where he stated: "Although I am not an airline operations or maintenance expert, I know that ASC had ground and service equipment, not for use in flight. Spare parts were kept for this equipment."
 
 
 17
 Melamid contends the bankruptcy court ignored other relevant portions of his declaration in finding no evidence had been presented as to the value of non-aircraft spare parts. He notes that in his declaration he stated ASC's spare parts inventory was valued at "approximately $2.3 to 2.5 million dollars." He also valued the two APUs as being "worth up to a million dollars apiece." He argues this should have been sufficient to establish the genuine issue that the non-aircraft spare parts had "some" value.
 
 
 18
 Melamid's argument is flawed in two respects. First, the fact that the spare parts, excluding the APUs, are worth between $300,000 and $500,000 does nothing to indicate what value, if any, is attributable to non-aircraft spare parts. Melamid produced no evidence as to the value of the aircraft spare parts other than the APUs.
 
 
 19
 Second, Melamid produced no evidence to indicate he had an interest in any ground or service equipment spare parts. The Chattel Mortgage and Security Agreement executed between ASC and Melamid did not give Melamid any interest in non-aircraft spare parts. The Security Agreement only gave Melamid an interest in "[e]ach aircraft spare part now owned or hereafter acquired by Company which is not subject to any other Lien, including but not limited to the parts listed on Schedule A as such schedule may be amended from time to time." (Emphasis added.) The Security Agreement further provided:
 
 
 20
 Mortgagees understand and agree that the Parts listed on Schedule A are spare parts currently not in use on any of Company's aircraft or engines and that Company may place one or more such Parts on such aircraft or engines from time to time. When any such Part is placed on such aircraft or engines, the Part so placed will no longer be subject to the lien of this Mortgage and shall not constitute a Mortgaged Property hereunder, and the part being replaced on such aircraft or engine shall immediately become subject to the Lien of this Mortgage.
 
 
 21
 (Emphasis added.) The collateral for the loan to ASC was clearly intended to be "aircraft" spare parts.
 
 
 22
 Significantly, Melamid did not produce any evidence indicating that any of the parts listed on Schedule A were non-aircraft spare parts. As the BAP noted, even Melamid's UCC-1 financing statement lists the collateral inventory as "aircraft spare parts." As the BAP stated: "The burden is on Melamid to show why his financing statement ... should not be taken at face value. Melamid has not attempted in his brief on appeal to shed any light on the subject, but rather improperly seeks to shift the burden to the Trustee, contrary to Celotex."
 
 
 23
 The BAP did not err in determining Melamid failed to establish a genuine issue of material fact as to whether he had a perfected security interest in the undetermined value of spare parts for ground and service equipment.
 
 B. APUs
 
 24
 Melamid contends the bankruptcy court erred in concluding the APUs were aircraft spare parts under 49 U.S.C. app. Sec. 1301. Melamid asserts two reasons why the APUs fall outside the recording requirement of Sec. 1403: (1) they are not necessary for safe, legal or proper flight and the FAA rules permitted ASC's aircraft to fly without a functioning APU or any at all; and (2) they are not used in flight. Melamid's position is unsupported by the plain reading of Sec. 1301.
 
 Subsection (37) of Sec. 1301 states:
 
 25
 (37) "Spare parts" means parts, appurtenances, and accessories of aircraft (other than aircraft engines and propellers), of aircraft engines (other than propellers), of propellers and of appliances, maintained for installation or use in an aircraft, aircraft engine, propeller, or appliance, but which at the time are not installed therein or attached thereto.
 
 
 26
 49 U.S.C. app. Sec. 1301(37).
 
 
 27
 At oral argument, Melamid conceded that the APUs were intended to be installed on an aircraft and provide power to various aircraft systems. Therefore, the APUs were clearly within the ambit of Sec. 1301.
 
 
 28
 Additionally, Melamid focuses on the definition of appliances in Sec. 1301(12) to distinguish the APUs from aircraft spare parts. Section 1301(12) provides:
 
 
 29
 (12) "Appliances" means instruments, equipment, apparatus, parts, appurtenances, or accessories, of whatever description which are used, or are capable of being or intended to be used, in the navigation, operation, or control of aircraft in flight (including parachutes and including communications equipment and any other mechanism or mechanisms installed in or attached to aircraft during flight), and which are not part or parts of aircraft, aircraft engines, or propellers.
 
 
 30
 49. U.S.C. app. Sec. 1301(12).
 
 
 31
 Melamid contends the APUs are not used "in flight" and therefore are not appliances. He reasons that because the APUs are not appliances, they cannot be spare parts. Melamid's interpretation of the statute is flawed.
 
 
 32
 The definition of spare parts in subsection (37) is not limited to appliances. Rather, the term spare parts includes any "parts, appurtenances, and accessories ... maintained for installation or use in an aircraft, aircraft engine, propeller, or appliance." 49 U.S.C. app. Sec. 1301(37) (emphasis added). The APUs were intended to be installed and used in an aircraft. That is all the statute requires for the APUs to be subject to the recording requirement of Sec. 1403.
 
 
 33
 The BAP correctly concluded the APUs are spare parts within the statutory definition of spare parts.
 
 II
 Trustee's Strong-Arm Powers
 
 34
 Melamid argues in the alternative that even if the collateral does fall within the recording requirements of Sec. 1403, the Trustee cannot take advantage of Sec. 1403 because he failed to present any evidence that he recorded his interest in the Registry, or that he relied on the absence of Melamid's interest from the Registry. Melamid contends that without any proof of reliance, the Trustee is not entitled to the protection of Sec. 1403 and, therefore, the Trustee's strong arm powers fail because Melamid perfected his interest in the collateral by filing the UCC-1 financing statement.
 
 
 35
 Under 11 U.S.C. Sec. 544(a): "The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable ...." (Emphasis added.) Section 544(a) allows the Trustee to step into the shoes of a hypothetical lien creditor whose lien was perfected as of the commencement of the case.
 
 
 36
 Whether the Trustee actually recorded his interest with or relied on the Registry is irrelevant. Under the strong arm provisions of Sec. 544, the Trustee is deemed to have a perfected interest in the collateral of the loan. The bankruptcy court correctly ruled that "the trustee as a BFP has standing under the FAA, certainly with respect to an unrecorded interest of an insider in the corporation."
 
 
 37
 The decision of the BAP affirming the bankruptcy court's grant of summary judgment in favor of the Trustee is
 
 
 38
 AFFIRMED.
 
 
 
 *
 Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 All sections under Title 49 referred to in this disposition were repealed on July 5, 1994 by Pub. L. No. 103-272, Sec. 7(b), 108 Stat. 1379. Their repeal has no bearing on our analysis and no further reference to this fact will be made